**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JUSTIN M. AIKMAN,**

        **Plaintiff,**

     **v.**                          **Civil Action 2:19-cv-5421
Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

**<u>OPINION AND ORDER</u>**

Plaintiff, Justin M. Aikman, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 4, 6). For the reasons that follow, the Commissioner of Social Security's nondisability finding is **REVERSED** and **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

I.    **BACKGROUND**

A.    **Prior Proceedings**

Plaintiff filed his application for DIB on August 18, 2015, and SSI on February 29, 2016, alleging disability beginning on December 3, 2011. (Doc. 7, Tr. 223–32). His applications were denied initially and again on reconsideration. After a video hearing was held on October 2, 2018 (Tr. 33–76), Administrative Law Judge Kevin Plunkett ("ALJ") issued an unfavorable decision on December 19, 2018. (Tr. 15–26). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of judicial review. (Tr. 1–6).

Plaintiff filed this action on December 12, 2019 (Doc. 1), and the Commissioner filed the administrative record on February 18, 2020 (Doc. 7). This matter is now ripe for consideration. (*See* Docs. 8, 9, 12).

### B.    Relevant Medical Background

The ALJ helpfully summarized the relevant evidence:

[] the record documents the claimant had adverse symptoms of constipation resulting in an anal fissure, which was corrected by surgery (17F/23; 18F/11). Moreover, while treatment records often describe the claimant's reports of back pain, there are no significant objective medical findings in the record to support more than minimal limitations on the claimant's ability to perform work activities arising from this impairment. In particular, objective testing and examinations have revealed mild findings (4F/63; 11F/4–5, 7–9; 12F/10). Specifically, cervical spine imaging showed mild to moderate disc space narrowing at C5 to C6, and mild disc space narrowing at C7 to T1 (11F/4). Additionally, imaging of the thoracic spine showed minimal degenerative changes (11F/8). The record documents unremarkable findings as it relates to imaging of the bilateral knees, lumbar spine, and hips (11F/5; 12F/10). Moreover, the claimant has consistently demonstrated a normal gait, muscle strength, and range of motion of the spine on examination (4F/69; 5F/6, 11; 8F/3, 6–7; 9F/3; 21F/5; 23F/4). Since his symptoms did not significantly limit the claimant's physical ability to perform work related activities, the undersigned finds that these impairments are non-severe (20 CFR 404.1521 and 416.921; SSR 96-3p).

The record documents a history of depression and anxiety, for which the claimant has been prescribed medication during the relevant period (10F/5; 13F/6; 15F/12; 16F/25). Although, while the consultative examiner diagnosed the claimant with unspecified anxiety disorder and unspecified depressive disorder, there is no evidence that he has ever engaged in any mental health treatment (10F/5). The State agency psychological consultants also found that the claimant's psychological conditions were non-severe (2A/12; 3A/12; 6A/10; 7A/10).

(Tr. 18).

[] The record documents the claimant underwent an ENT evaluation in December 2011 for various symptoms of sore throat, fevers, chills, night sweats, muscle aches and generalized fatigue (4F/118). He was initially assessed with a viral illness (4F/118). He was prescribed three courses of antibiotics and steroid injection with one antibiotic with return of his symptoms (1F/7; 2F/4).

2

The claimant underwent extensive testing for periodic fever syndromes without definite explanation for his symptomatology (13F/l). He was treated with prednisone which helped initially in regard to his fever episodes, but then subsequent courses did not relieve his symptoms (13F/l). In November 2016, the claimant presented to Cleveland Clinic with reported symptoms of sore throat, cough, chest pain, abdominal discomfort, constipation, arthralgias and rash on his back (13F/3). It was determined the claimant's symptoms were consistent with a diagnosis of Adult Onset Stills Disease (13F/6). The claimant was initially prescribed methotrexate, which was ultimately discontinued, as it was ineffective (21F/2). In April 2017, the claimant was prescribed Kineret, a daily injectable biologic (17F/24). Subsequent evidence documents that his fever episodes have been far less frequent since he started this medication (21F/2). It was determined that the claimant's symptoms of diffuse widespread pain, sleep problems and fatigue between flares were consistent with fibromyalgia (17F/29). He was advised that optimal sleep, regular aerobic exercise and treatment of depression were the cornerstones of therapy for fibromyalgia (17F/29). In July 2018, the claimant reported that his most prominent symptoms were musculoskeletal pain and that he only had breakthrough fevers when he was off his biologic medication (21F/5).

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because physical examinations revealed negative to mild findings overall. In 2012, examination findings revealed the claimant's lungs were clear to percussion, with no crackles, wheezes, rhonchi, stridor or pleural rubs (4F/4, 7). His abdomen was soft and non-tender (4F/7). In June 2013, the claimant's left knee was tender at the medial collateral ligament, but he demonstrated normal range of motion and negative drawer testing (4F/16). Examination findings were otherwise unremarkable (4F/15). In March 2014, the claimant presented with symptoms of a cold (4F/27). He had scattered rhonchi of the lungs bilaterally both anteriorly and posteriorly, but was able to breath without effort (4F/29). Rheumatology clinic records, from 2015 and 2016, document normal examination findings with clear lungs, a soft, non-tender and non-distended abdomen, normal range of motion of all joints, no crepitus or synovitis in any of the joints, no obvious joint deformities and normal muscle strength in all muscle groups (4F/69; 5F/11; 9F/3). The claimant demonstrated normal coordination and gait with no focal neurological deficits.

The claimant underwent a consultative examination at the request of the State agency in June 2016 (*see generally* 8F). The examiner, Sushil M. Sethi, M.D., observed the claimant demonstrated some mild discomfort and decreased range of motion of the lumbar spine, but findings were otherwise unremarkable (8F /3, 7). In particular, the claimant demonstrated a normal gait; he was able to walk on his tiptoes and heels and could squat (8F/3). He could get on and off the examination table without difficulty. Straight leg raising test was negative at 80 degrees hip flexion bilaterally. Range of motion of the upper extremities was normal. There

3

was no muscle weakness or atrophy. The claimant had normal range of motion of the cervical spine, thoracic spine and upper extremities (8F/7).

Cleveland Clinic records, from November 2016, noted the claimant had good range of motion of the spine, arms, hips, knees and ankles, with limited flexion, extension and lateral rotation of the neck (13F/5). In April 2017, he had some tenderness to palpation around multiple tender points throughout the body, but good range of motion of the spine, upper extremities, hips, knees and ankles (17F/26–27). In August 2018, the claimant underwent a neurological evaluation for reports of hand pain, chronic fatigue and a "zapping sensation throughout his whole body" (21F/l). However, the claimant demonstrated 5/5 upper extremity strength, normal gait, and could heel and toe and tandem walk on examination (23F/4). He could get up from the seated position without the use of his arms (23F/2).

Second, the objective diagnostic tests and studies do not support the claimant's allegations. A December 2011 CT scan of the abdomen and pelvis was negative (4F/117).  Additionally, and as noted above, cervical spine imaging showed mild to moderate disc space narrowing at C5 to C6, and mild disc space narrowing at C7 to Tl (11F/4). Moreover, imaging of the thoracic spine showed minimal degenerative changes (11F/8). The record also documents unremarkable findings as is relates to imaging of the bilateral knees, lumbar spine, and hips (11F/5; 12F/10).

Third, the record indicates the claimant has not been complaint with prescribed treatment. The claimant's treating providers have recommended that he engage in regular aerobic exercise, aquatic physical therapy and cognitive behavioral therapy as treatment for fibromyalgia and arthralgias (17F/7; 22F/6).

(Tr. 22–23).

## C.      Relevant Hearing Testimony

The ALJ summarized Plaintiff's statements and the testimony from Plaintiff's hearing:

The claimant has alleged that he is unable to work due to symptoms related to Adult Onset Still's Disease (AOSD), a rare systemic auto-inflammatory disease characterized by fevers, joint pain and rashes (18F/6). As far as his symptoms, the claimant reported he experiences fevers and sore throat during flare-ups. He also reported having widespread organ, nerve and joint pain.  He said that he experiences numbness, tingling and loss of grip of the extremities and has difficulty lifting his arms above chest level. The claimant testified that fibromyalgia has been considered as a diagnosis but was not conclusive, although treatment records indicate the claimant has been diagnosed with this condition (21F/l). He has also alleged gastrointestinal problems with intermittent episodes of diarrhea and

constipation (Hearing Testimony). The claimant testified that he has thought about going back to work, and has applied, but never followed through because he believed that he couldn't sustain a full-time job (Hearing Testimony).

(Tr. 21).

[A]t the hearing, the claimant's testimony indicated that he engages in very little physical activity (Hearing Testimony). The claimant reported that he spends most of his time at home trying to make himself comfortable (Hearing Testimony).

[] The claimant testified that he is often exhausted after loading the dishwasher (Hearing Testimony). Yet, the claimant was at home with his newborn son starting in 2016, so this does suggest some ability to lift and carry and be on his feet, although the claimant testified that he was concerned about dropping his son (Hearing Testimony). Per testimony, the claimant's son has been cared for by his mother-in-law starting summer 2018. Additionally, the claimant stated that he drives during the one hour and forty-minute commute to Cleveland Clinic because his wife does not like to drive on the freeway (Hearing Testimony).

(Tr. 23).

### D.       The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairments: adult onset still's disease, fibromyalgia, irritable bowel syndrome, and obesity.  (Tr. 18).  The ALJ held, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment.  (Tr. 20).

As for Plaintiff's RFC, the ALJ found:

[T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours, standing for six hours, walking for six hours; and the claimant can push/pull as much as he can lift/carry. The claimant can never be exposed to extreme heat.

(Tr. 21).  He found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

5

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 21–22).

As for the relevant opinion evidence, the ALJ first considered the opinion of consultative examiner, Dr. Susil Sethi, who opined that Plaintiff's ability to preform work-related physical activities such as sitting, standing, lifting, carrying, and handling objects was normal. (Tr. 24). The ALJ afforded Dr. Sethi's opinion "partial weight," explaining that "evidence received at the hearing level, such as [Plaintiff's] continued symptoms despite treatment, shows that [Plaintiff] is more limited than what was determined by [Dr. Sethi]." (*Id*.). Next, the ALJ considered the opinion of one of Plaintiff's treating physicians, Dr. Aaron Wilson, who opined that Plaintiff would be absent from work more than three days per month, would need to take work breaks every fifteen to twenty minutes, could sit for ten minutes at a time and for two hours total in an eight-hour workday, and could stand for ten minutes at a time and stand/walk for less than two hours total in an eight-hour workday. (*Id*.). The ALJ afforded Dr. Wilson's opinion "partial weight," stating that there is "little support in the medical evidence of record for Dr. Wilson's conclusions that the claimant is so limited physically as to be only able to sit for ten minutes at a time[.]" (*Id*.). Finally, the ALJ considered the opinion of state agency medical consultants, Drs. James Cacchillo and Esberdado Villaneuva, who concluded that the evidence in the file did not support a severe physical impairment that would result in any significant limitations. (*Id*.). The ALJ assigned their opinion "little weight," explaining that "the record evidence demonstrates more than minimal limitations in [Plaintiff's] ability to perform work-related activities with regard to the aforementioned impairments." (*Id*.).

The ALJ next found that "[t]he claimant is capable of performing past relevant work as a Bartender and Camera Operator," finding that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.*).  The ALJ determined that Plaintiff could also perform jobs that exist in significant numbers in the national economy, such as a cashier, rental clerk, or mail clerk.  (Tr. 26).  He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 3, 2011, through the date of the decision."  (*Id.*).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court."  *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently."  *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

7

## III.    DISCUSSION

Plaintiff sets forth four specific errors: (1) that the ALJ's limitations do not reflect the limitations arising from his primary impairments (Doc. 8 at 12–15); (2) that the ALJ improperly cherry-picked the evidence (*id*. at 15–17); (3) that the ALJ failed to satisfy the treating physician rule in his assessment of Dr. Wilson's opinion (*id*. at 17–18); and (4) that the ALJ improperly failed to secure a medical expert to assess his complex autoimmune disorder (*id*. at 18).  The Court turns first to Plaintiff's argument that the ALJ failed to properly consider the opinion of his treating physician.

### A.  Treating Physician

Plaintiff asserts that the ALJ improperly discounted the opinion of his treating physician Dr. Wilson without setting forth good reasons supporting his decision to do so.  (*See generally* Doc. 8 at 17–18).  The Court agrees.

Between September 2016 and April 2018, Plaintiff saw Dr. Wilson for recurring fevers and associated symptoms.  (*See, e.g.*, Tr. 711–15, 790–92, 796–98, 804–06, 819–20).  On April 19, 2018, Dr. Wilson completed a "Treating Physician Residual Functional Capacity Opinion."  (Tr. 815–17).  On it, he noted that he has been treating Plaintiff since September 28, 2016.  (Tr. 815). He lists Plaintiff's diagnoses as stills disease, fibromyalgia, generalized anxiety, sleep apnea, IBS, and periodic fever syndrome.  (*Id*.).  Dr. Wilson listed the symptoms of Plaintiff's impairments as "fatigue, pain, malaise, abdominal cramping, chronic cough, headaches, blurred vision, tinnitus, pain and numbness from neck down to feet."  (*Id*.).  Dr. Wilson then completed a part of the form specific to Plaintiff's diagnosis of still's disease.  (Tr. 815).  He noted that Plaintiff began having intermittent, recurrent fevers every two weeks starting in October 2011.  (*Id*.).  His symptoms, in

8

addition to his fevers, included "chronic fatigue, polyarthralgia, malaise, abdominal pain, body aches." (*Id.*). Dr. Wilson further noted that, after a fever episode, it would take Plaintiff seven days to recover enough that he would be able to return to full-time work duties. (*Id.*). He also opined that, before he began treatment for still's disease, Plaintiff would be absent from work more than three days a month and would need to take breaks every fifteen to twenty minutes. (*Id.* at 815–16).

According to Dr. Wilson, Plaintiff began receiving treatment for still's disease in March 2017 but continued to experience fevers every two weeks. (*Id.* at 816). Dr. Wilson opined that currently, Plaintiff's fatigue, pain, malaise, and cognitive impairment do not allow for him to maintain or perform suitable work. (*Id.*). Specifically, he noted that Plaintiff would have to miss more than three days of work a month due to his impairments and would need to take breaks every fifteen to twenty minutes. (*Id.*). He also opined that Plaintiff cannot walk any city blocks without severe pain, can sit for ten minutes at one time, can stand for ten minutes at one time, sit for about two hours in an eight-hour workday, and stand/walk for less than two hours in an eight-hour workday. (*Id.* at 816–17).

Because Dr. Wilson is a treating physician, two related rules govern how the ALJ was required to analyze his opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016).[1] The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

[1] Effective for claims filed after March 27, 2017, the Social Security Administration's new regulations alter the treating physician rule in a number of ways. *See* 20 C.F.R. §§ 404.1527, 416.927 (2016).

evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alterations in original)); *see also* 20 C.F.R. § 404.1527(c)(2); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550–51 (6th Cir. 2010). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified upon the record.'" *Blakely* 581 F.3d 399 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d at 243 (alterations in

original)).  The treating physician rule and the good reasons rule together create what has been

referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*,

975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Applying the above standards here, the Court concludes that the ALJ failed at both steps.

The ALJ had the following to say about Dr. Wilson's opinion:

> The undersigned has also considered the opinion of Aaron Wilson, M.D., who
> opined the claimant would be absent from work more than three days per month
> and would need to take work breaks every fifteen to twenty minutes (19F/1–2).  Dr.
> Wilson assessed the claimant could sit for ten minutes at one time and for two hours
> total in an eight-hour day (19F/3).  He assessed the claimant could stand for ten
> minutes at one time and stand/walk for less than two hours total in an eight-hour
> day (19F/3).  The undersigned assigns this opinion partial weight, as there is little
> support in the medical evidence of record for Dr. Wilson's conclusions that the
> claimant is so limited physically as to be only able to sit for ten minutes at a time
> (*see generally* 1F–23F).  Notably, the claimant sat through the hearing and also
> testified that he drives and makes the one hour and forty minute drive to Cleveland
> Clinic (Hearing Testimony).

(Tr. 24).

"[T]he ALJ's errors are twofold: (1) [he] did not evaluate Dr. [Wilson's] opinions under

the treating physician rule, and (2) [he] did not provide good reasons for any analysis [he]

conducted of Dr. [Chamberlain's] opinions under the treating physician rule." *Chapman v.

Comm'r of Soc. Sec.*, No. 3:19-CV-00205, 2020 WL 3971402, at *3 (S.D. Ohio July 14, 2020).

(citing *Hargett v. Comm'r of Soc. Sec.*, No. 19-3718, 2020 WL 3833072, at *4 (6th Cir. July 8,

2020) ("[A]n ALJ may not summarily discount a treating-source opinion as not well-supported by

objective findings or being inconsistent with the record without identifying and explaining how

the substantial evidence is purportedly inconsistent with the treating-source opinion.")).

In responding to Plaintiff's statement of errors, the Commissioner glosses over the first

requirement, emphasizing that the ALJ provided good reasons for discounting Dr. Wilson's

opinion because it is inconsistent with the record. (Doc. 9 at 5). But the Commissioner's "good reasons" argument is premature. Indeed, "[t]he ALJ did not mention the treating physician rule or the legal criteria applicable to determine whether Dr. [Wilson's] opinions were due to controlling weight under the treating physician rule." *Chapman*, 2020 WL 3971402, at *3. And, "[b]ecause of these omissions, there is no way to ensure a meaningful review of whether the ALJ evaluated Dr. [Wilson's] opinions under the correct legal criteria necessitated by the treating physician rule." *Id*. (citing 20 C.F.R. § 404.1527(c)(1)–(6)) (holding that "[t]he ALJ improperly reduced the two-step evaluation procedure mandated by the Regulations into solely consideration of the remaining factors in the Regulations, such as 'supportability' and 'consistency' factors").

But, even assuming *arguendo* that the ALJ properly performed the controlling weight analysis, his explanation for discounting Dr. Wilson's opinion does not constitute good reasons under the Regulations. As explained, to satisfy the reasons-giving requirement, "[t]he ALJ must identify the specific evidence in the record that supports a finding that a treating physician's opinion was inconsistent with other substantial evidence in the record and apply the factors listed in 20 C.F.R. § 404.1527(c)(2)—length of the treatment relationship, frequency of the examination, nature and extent of the treatment relationship, supportability of the medical source, consistency of the medical opinion, specialization of the treating physician, and other important factors." *Davis v. Comm'r of Soc. Sec.*, No. 2:17-CV-995, 2020 WL 1305030, at *7 (S.D. Ohio Mar. 19, 2020) (citing *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)). At base, an ALJ must "build an accurate and logical bridge between the evidence and the result." *Foster v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 709, 717 (S.D. Ohio 2019) (quotation marks and citations omitted). The ALJ's analysis of Dr. Wilson's opinion fails to satisfy this requirement.

In discounting Dr. Wilson's opinion, the ALJ states only that there is "little support in the medical evidence of record for Dr. Wilson's conclusions that the claimant is so limited physically as to be only able to sit for ten minutes at time." (Tr. 24). But the ALJ does not cite specific records. Instead, he cites the medical evidence as a whole, as well as his observation that Plaintiff "sat through the hearing and also testified that he drives and makes the one hour and forty minute drive to Cleveland Clinic." (*Id*.).

The Court finds that the ALJ's "bare, conclusory statements neither satisfy the notice requirement of the good reasons rule nor allow us to review meaningfully whether the ALJ properly applied the treating physician rule." *Hargett v. Comm'r of Soc. Sec.*, No. 19-3718, 2020 WL 3833072, at *5 (6th Cir. July 8, 2020). To begin, while the ALJ touched slightly on the relevant factors of supportability and consistency, he does not consider the other relevant factors or provide a "meaningful analysis . . . or explanation of how the ALJ's balancing of the various factors led [him] to conclude that" Dr. Wilson's opinion should be afforded only partial weight. *Hargett*, 2020 WL 3833072, at *6.

More importantly, "the ALJ's conclusory statements fail to identify the specific ways in which the [opinion] is not consistent with [Plaintiff's] overall medical record." *Id*. For example, the ALJ does not explain how Dr. Wilson's numerous other limitations are inconsistent with the record, nor does he pinpoint specific medical records demonstrating Plaintiff's ability to stand/walk. Said differently, "the ALJ's decision demonstrates no apparent attempt 'to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.'" *Id*. (quoting *Friend*, 375 F. App'x at 552 ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record . . .")). At

13

bottom, the Court is left without "an accurate and logical bridge between the evidence and the result." *Foster*, 382 F. Supp. 3d at 717.  Substantial evidence fails to support the ALJ's opinion as a result.

In such a situation, "the Court must determine whether to remand the matter for rehearing or to award benefits." *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 923 (S.D. Ohio 2016).  "Generally, benefits may be awarded immediately 'if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'" *Id*. at 924 (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).  A court should award benefits in a case only "where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming." *Id*.  The Court finds that proof of disability is not overwhelming.  *See id.*  Upon remand, the ALJ should properly consider and discuss the opinion of Dr. Wilson and provide an explanation that is consistent with the Regulations when assigning weight to the opinion.

### B. Remaining Arguments

Because Plaintiff's argument regarding his treating physician warrants remand, the Court need not address his remaining three arguments.  However, upon remand, the ALJ may consider his other arguments, including that the ALJ's limitations do not reflect the limitations arising from his primary impairments, that the ALJ improperly cherry-picked the evidence, and that the ALJ failed to secure a medical expert to assess Plaintiff's complex autoimmune disorder.

### IV.   CONCLUSION

For the reasons stated, the Commissioner of Social Security's nondisability finding is

14

**REVERSED** and **REMANDED** to the Commissioner and the ALJ under Sentence Four of §

405(g).

     IT IS SO ORDERED.


Date:   August 3, 2020                    /s/ Kimberly A. Jolson
                                               KIMBERLY A. JOLSON
                                               UNITED STATES MAGISTRATE JUDGE

15